UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KRYSTAL L.C., <br>    *Plaintiff*, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br>    *Defendant*. | )  CASE NO. 3:24-CV-301 (KAD) <br> ) <br> ) <br> ) <br> ) <br> )  FEBRUARY 21, 2025 <br> ) |

MEMORANDUM OF DECISION
RE: PLAINTIFF'S MOTION TO REVERSE (ECF NO. 19) AND COMMISSIONER'S MOTION TO AFFIRM (ECF NO. 25)

Kari A. Dooley, United States District Judge:

Plaintiff Krystal L.C. ("Plaintiff") brings this administrative appeal pursuant to 42 U.S.C. § 405(g). She appeals the decision of Defendant Commissioner of Social Security (the "Commissioner")[1], denying her application for disability benefits and supplemental security income pursuant to Title II and Title XVI of the Social Security Act ("Act"). Plaintiff seeks to reverse the Commissioner's decision insofar as the Administrative Law Judge's ("ALJ") mental residual functional capacity ("RFC") determination is not supported by substantial evidence, and the ALJ otherwise "improperly assessed [Plaintiff's] subjective complaints." *See* Motion to Reverse, ECF No. 19, at 2. Alternatively, she seeks a remand for further proceedings before the Commissioner. *Id.* In response, the Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record and is based upon the correct application of legal standards, and thus should be affirmed. *See* Motion to Affirm, ECF No. 25. For the reasons set forth below, Plaintiff's Motion to Reverse, ECF No. 19, is **DENIED**, and the Commissioner's Motion to Affirm, ECF No. 25, is **GRANTED**.

---

[1] On February 19, 2025, Lee Dudek became the Acting Commissioner of Social Security.

**Standard of Review**

A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3). In addition, a claimant must establish that their physical or mental impairment or impairments are of such severity that they are not only unable to do their previous work but "cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* at § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity ("SGA"); (2) if not, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509" or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations[2]; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's RFC to perform their past relevant work; and

---

[2] Appendix 1 to Subpart P of Part 404 of C.F.R. 20 is the "Listing of Impairments."

(5) if the claimant is unable to perform their past work, the Commissioner must finally determine whether there is other work in the national economy which the claimant can perform in light of their RFC, education, age, and work experience. *Id.* at §§ 404.1520(a)(4)(i)–(v); 404.1509. The claimant bears the burden of proof with respect to Steps One through Four and the Commissioner bears the burden of proof as to Step Five. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The fourth sentence of Section 405(g) of the Act provides that a "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). And it is well-settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). The court does not inquire as to whether the record might also support the plaintiff's claims but only whether there is substantial evidence to support the Commissioner's decision. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x. 58, 59 (2d Cir. 2013). Thus, substantial evidence can support the Commissioner's findings even if there is the potential for drawing more than one conclusion from the record. *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). The court can only reject the Commissioner's findings of facts "if a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). Stated

3

simply, "if there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).

**Facts and Procedural History**

On March 18, 2021, Plaintiff applied for disability insurance benefits ("DIB")[3] and supplemental security income ("SSI")[4] pursuant to Title II and Title XVI of the Act,[5] alleging an onset date of December 1, 2020. Her claim was initially denied on June 29, 2021, and upon reconsideration on December 3, 2021. Thereafter, a hearing was held before ALJ Deirdre Horton on January 12, 2023.

On March 29, 2023, the ALJ issued a written decision denying Plaintiff's applications for benefits. At Step One, the ALJ found that Plaintiff had not been engaged in SGA during the relevant time period.[6] At Step Two, the ALJ determined that Plaintiff had severe impairments, to wit, bipolar disorder with depression and an anxiety disorder. The ALJ found non-severe impairments of historical substance abuse and obesity. At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the regulations.[7] At Step Four, the ALJ found that the Plaintiff has the RFC to perform:

> a full range of work at all exertional levels but with the following non-exertional limitations: The claimant is limited to simple, routine tasks. There should be no strict time or production quotas such as pace dependent or belt work. The claimant can have occasional interaction with the general public. She can adjust to minor changes in the workplace.

---

[3] The regulations for DIB are found at 20 C.F.R. § 404.900, *et seq.*

[4] The regulations for SSI are found at 20 C.F.R. § 416.1400, *et seq.*

[5] 42 U.S.C. § 401, *et seq.*; 42 U.S.C. § 1381, *et seq.*

[6] In so finding, the ALJ observed that Plaintiff did work after her alleged onset date, but that this work activity did not rise to the level of SGA.

[7] *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1 (listing qualifying impairments).

4

Based on Plaintiff's RFC, as well as the testimony of vocational expert ("VE") Edmond Calandra, the ALJ further concluded that Plaintiff is unable to perform her past relevant work as a daycare worker (DOT # 359.677-018, SVP4) and a waitress (DOT # 311.477-030, SVP3).  At Step Five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, namely: kitchen helper (DOT # 318.687-010, SVP2), hand packager (DOT # 920.587-018, SVP2), and laundry worker (DOT # 361.685-018, SVP2), among others.  Accordingly, the ALJ concluded that Plaintiff was not disabled under §§ 216(i) and 223(d) from December 1, 2020 to March 29, 2023.

Plaintiff submitted a request for further review, which the Appeals Council denied on January 11, 2024.  This timely appeal followed.

**Discussion**

Plaintiff challenges the ALJ's RFC determination, principally arguing that the ALJ failed to properly evaluate the medical opinions of treating providers APRN Ellen Villasenor and APRN Lynn MacMaster, and otherwise erroneously discounted Plaintiff's own statements regarding the intensity and persistence of her symptoms and their impact on her ability to work.  In response, the Commissioner argues that the ALJ properly evaluated the medical opinion evidence consistent with the applicable regulations, and likewise properly found that Plaintiff's subjective symptomology was inconsistent with the record evidence. The Court agrees with the Commissioner.

<u>Medical Opinion Evidence</u>

First, the Court concludes that the ALJ properly evaluated—and found to be minimally persuasive—the medical opinions of APRN Villasenor and APRN MacMaster.  Moreover, the

5

ALJ was not required to favor the foregoing medical opinions over those provided by "non-examining state agency consultants."

As Plaintiff filed her DIB and SSI applications after March 27, 2017, the SSA's more recent regulations regarding the consideration and articulation of the persuasiveness of medical opinions apply. *See* 20 C.F.R. § 404.1520c. Under these regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [a plaintiff's] medical sources." *Id.* at § 404.1520c(a). Rather, an ALJ must evaluate and determine the "persuasiveness" of "all of the medical opinions . . . in [the] case record" using the factors outlined at § 404.1520c(c). *Id.* at § 404.1520c(b).

The ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions." *Id.* at § 404.1520c(b)(2). "Supportability concerns the degree to which the objective medical evidence and supporting explanations presented by a medical source support the medical opinion; consistency concerns the degree to which the medical opinion is consistent with the other evidence in the record." *Rodriguez v. Kijakazi*, No. 21-CV-2358 (JCM), 2022 WL 3211684, at *11 (S.D.N.Y. Aug. 9, 2022); 20 C.F.R. § 404.1520c(c)(2)-(3). These two factors are the "most important" in determining the persuasiveness of an opinion. *See* 20 C.F.R. § 404.1520c(a), (b)(2). "In addition to supportability and consistency, the ALJ must also consider—but need not expound on—three other factors, including (a) the relevant provider's relationship with the claimant (which, in turn, incorporates five sub-factors); (b) specialization; and (c) other factors, *i.e.*, anything else that 'tend[s] to support or contradict a medical opinion.'" *Rodriguez*, 2022 WL 3211684, at *12 (citing 20 C.F.R. §§ 404.1520c(b)(2), (c)(3)-(5)). "An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's decision." *Villier*

*on behalf of N.D.D.R. v. Comm'r of Soc. Sec.*, No. 23-893-CV, 2024 WL 2174236, at *3 (2d Cir. May 15, 2024) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (*per curiam*)).

*APRN Villasenor*

In her medical opinion, dated October 3, 2021, APRN Villasenor observed that Plaintiff suffers from bipolar disorder, anxiety, and substance abuse in remission, and was hospitalized twice in 2020. Tr. 1532–33. She further concluded that Plaintiff has a "good" ability to maintain personal appearance, a "fair" ability to follow work rules, relate to coworkers, and use judgment, but a "poor" ability in the remaining 11 areas of mental function. *Id.* at 1532. The ALJ found APRN Villasenor's medical opinion to be minimally persuasive because it: (1) "does not provide a clinical assessment of why the claimant cannot work" and was based on Plaintiff's "self-reported barriers to performing work activity"; (2) fails to acknowledge that Plaintiff was often non-compliant with her medication, and generally functioned at a better level when she was taking her medication as prescribed; and (3) fails to even mention, much less consider, the fact that Plaintiff was successfully taking care of her infant child at the time. *Id.* at 34. Plaintiff argues that the ALJ failed to properly assess the consistency and supportability factors when evaluating APRN Villasenor's opinion, but the Court is not persuaded.

As an initial matter, the ALJ correctly observed that APRN Villasenor's conclusions were not supported by any reference to clinical findings or other explanation. Instead, the opinion itself is primarily a series of checked boxes. And when specifically asked to "describe any limitations and include the medical/clinical findings that support that assessment," APRN Villasenor left that

7

portion of the form blank.[8] Nevertheless, the ALJ did not discount APRN Villasenor's opinion solely on the ground that it was presented on a check-box form. *See Villier*, 2024 WL 2174236 at *2. The ALJ reviewed the treatment records in search of support for APRN Villasenor's assessment, but concluded that those treatment records do not contain any clinical assessment demonstrating Plaintiff's inability to work. In fact, insofar as Plaintiff's treatment records indicate that she was "doing well overall," "feeling content," and "not too stressed out" in the months prior to APRN Villasenor's opinion, they tend to support the ALJ's conclusion that APRN Villasenor overstated Plaintiff's functional limitations.[9]

The ALJ further correctly observed that APRN Villasenor failed to adequately account for Plaintiff's improved functionality when compliant with treatment, as compared to periods of non-compliance. APRN Villasenor's notation that Plaintiff's compliance with treatment was "excellent" is almost inexplicable in the face of the record evidence, which reveals that Plaintiff was regularly non-compliant with her medication regimen; often expressed a reluctance to taking her medications; and on occasion sought medications other than those prescribed. The record evidence also revealed that Plaintiff consistently functioned at a higher level during periods when she was taking her medications as prescribed.

---

[8] In her reply brief, Plaintiff emphasizes that the persuasiveness of a medical opinion "is commensurate, in significant part, to the level of explanation and supporting evidence that the source provides." *See* Pl. Reply, ECF No. 26 (quoting *Glenn G. v. Kijakazi*, No. 3:22-CV-824 (RMS), 2023 WL 2477501, at *9 (D. Conn. Mar. 13, 2023)). The Court agrees, but nevertheless finds that Plaintiff's reliance on *Glenn G.* is misplaced. Indeed, the lack of "explanation and supporting evidence" provided by APRN Villasenor is precisely why the ALJ found the opinion "minimally persuasive," and further exemplifies the ALJ's due consideration of the "supportability" factor.

[9] The Court acknowledges that the approximately seven months of treatment records from Bridges Healthcare, Inc. depict fluctuating levels of success in Plaintiff's coping with her mental impairments. Indeed, at some appointments, Plaintiff reported increased anxiety and feelings of loneliness and depression. At others, she reported feeling content and doing well with her newborn. Nevertheless, the records generally indicate that Plaintiff was increasingly stable in the three months leading up to APRN Villasenor's opinion. As such, the Court is satisfied that substantial evidence supports the ALJ's conclusion that APRN Villasenor overstated Plaintiff's limitations (*i.e.*, that her opinion lacks supportability).

Lastly, the ALJ correctly emphasized APRN Villasenor's failure to consider, or even mention, that Plaintiff was successfully taking care of her infant child while receiving treatment for her mental disorders. And as acknowledged by the ALJ, Plaintiff's ability to care for her young daughter is no small feat, and is certainly inconsistent with APRN Villasenor's opinion that Plaintiff has only a "poor" ability to, *e.g.*, demonstrate reliability, perform simple job instructions, function independently, and deal with work stresses. Under similar circumstances, courts have upheld an ALJ's discounting of medical opinions which fail to adequately consider, *inter alia*, a claimant's ability to care for a child. *See, e.g.*, *Jennifer T. v. Saul*, No. 3:20-CV-159 (AWT), 2021 WL 3088044, at *4 (D. Conn. July 22, 2021). For these reasons, the Court finds that the ALJ properly evaluated APRN Villasenor's medical opinion.

*APRN MacMaster*

As to APRN MacMaster, she completed a Mental Impairment Questionnaire regarding Plaintiff on October 11, 2022. *See* Tr. 2747–51. At that time, APRN MacMaster had been treating Plaintiff for nearly two years for her bipolar disorder, anxiety, substance abuse in remission, and unspecified ADHD. *Id.* at 2747. And indeed, APRN MacMaster reported that Plaintiff's most frequent symptoms are depression, anxiety, poor focus and concentration, sleep disturbances, unstable interpersonal relationships, and impulsivity. *Id.* at 2749. In a check-box form, APRN MacMaster opined that Plaintiff had: marked limitations in understanding and remembering detailed instructions, maintaining attention and concentration for extended periods, working with or near others without being distracted by them, and completing a workday without interruptions from her psychological symptoms; and moderate-to-marked limitations in performing functions within a schedule and being punctual, sustaining routine without supervision, and accepting instructions and responding appropriately to criticism. *Id.* at 2750. APRN MacMaster further

9

concluded that, due to her mental impairments, Plaintiff was likely to be absent from work more than three times per month. *Id.* at 2751. As with APRN Villasenor, the ALJ found APRN MacMaster's medical opinion to be minimally persuasive because it failed to note Plaintiff's frequent medication non-compliance, or even mention her ability to care for her young daughter, and generally overstated Plaintiff's mental limitations. And for substantially the same reasons set forth *supra*, the Court rejects Plaintiff's argument that the ALJ improperly evaluated APRN MacMaster's opinion.

Once again, the ALJ's observations are accurate, and reflect her due consideration of the supportability and consistency factors in connection with APRN MacMaster's opinion. Initially, the ALJ indicated that APRN MacMaster's opinion was minimally persuasive for generally the same reasons as APRN Villasenor's, to include, *inter alia*, that the opinion was not supported by any reference to clinical findings and was otherwise largely based on Plaintiff's subjective complaints. *See Acevedo v. Comm'r of Soc. Sec.*, No. 21-CV-10621 (KHP), 2023 WL 1433648, at *10 (S.D.N.Y. Feb. 1, 2023) (finding no error where ALJ's discussion from an earlier part of the decision was "sufficient to allow [the court] to understand the ALJ's reasoning as to the supportability and consistency of the medical opinion"). Additionally, the ALJ expressly concluded that Plaintiff's ability to care for her daughter, "a complex and important task," without difficulty, is inconsistent with APRN MacMaster's findings that Plaintiff is moderately to markedly impaired in several areas of "concentration and persistence" functionality. Tr. 34–35. The ALJ further stressed that APRN MacMaster's opinion—which entirely fails to discuss Plaintiff's medication compliance—cannot be reconciled with the overall medical evidence of record demonstrating that Plaintiff is often non-compliant with her medication and generally functions better during periods of compliance. Indeed, as noted by the Commissioner, APRN

10

MacMaster's failure to consider Plaintiff's medication compliance is particularly damaging given that treatment notes from APRN MacMaster herself indicate that Plaintiff's functionality improved with treatment compliance. *See* Tr. 2910, 2913, 2920.

In light of the foregoing, the Court concludes that the ALJ sufficiently assessed the supportability and consistency factors with regard to the opinions of both APRN Villasenor and APRN MacMaster, and that substantial evidence supports the ALJ's evaluation of the medical opinion evidence.[10]

*State Agency Consultants*

Lastly, Plaintiff argues that the ALJ erred in crediting the prior administrative medical findings of state agency consultants Dr. Leveille, PsyD. (Tr. 89–91) and Dr. Brown, PhD. (Tr. 104–06) over the opinions of APRN Villasenor and APRN MacMaster. Not so. It is well-established that the more recent regulations no longer apply the treating physician rule, and that the ALJ is not obligated to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." *Schillo v. Kijakazi*, 31 F.4th 64, 71 n.1 (2d Cir. 2022) (citing 20 C.F.R. §§ 404.1520c(a)). Moreover, as set forth above, the ALJ did consider the persuasiveness of APRN Villasenor and APRN MacMaster's opinions (*i.e.*, Plaintiff's treating providers), and adequately explained why he found them to be minimally persuasive. Plaintiff's objection to the

---

[10] The Court further observes that the ALJ did not outright reject these medical opinions, and indeed, accepted that Plaintiff has some limitations in mental functioning. *See* Tr. 34–35. Rather, the ALJ determined only that APRN Villasenor and APRN MacMaster had overstated those limitations and as such, found their opinions minimally persuasive.

11

ALJ's weighing of the medical opinion evidence does not, on this record, warrant reversal.[11] *See Porteus v. O'Malley*, No. 23-969-CV, 2024 WL 2180203, at *2 (2d Cir. May 15, 2024) (ALJ entitled "to weigh the conflicting evidence in the record" and resolve any such conflicts) (citations omitted).

Substantial Evidence

Having determined that the ALJ did not err in her assessment of the medical opinion evidence, the Court turns to whether the ALJ's RFC determination is otherwise supported by substantial evidence. Here, Plaintiff argues that the ALJ did not sufficiently explain why Plaintiff's subjective complaints were inconsistent with the record evidence. The Court disagrees.

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545; 416.945. In formulating an RFC, an ALJ uses "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3); *see also Corbiere v. Berryhill*, 760 F. App'x. 54, 57 (2d Cir. 2019) ("[T]he ALJ must weigh all the evidence to make a[n RFC] finding consistent with the record as a whole."). But it is the plaintiff's burden to provide evidence to establish any work-related limitations. *See Smith v. Berryhill*, 740 F. App'x. 721, 726 (2d Cir. 2018).

While an ALJ is required to consider the claimant's subjective symptomology, he or she is "not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (finding that the ALJ may consider the claimant's daily restrictions, activities, and efforts to work). The ALJ has discretion to "arrive at an independent judgment, in

---

[11] Plaintiff further submits that the ALJ "failed to adequately explain the supportability and consistency factors underlying her conclusion that the state agency consultants' opinions were persuasive." The Court agrees with the Commissioner that this argument is undeveloped. Indeed, as to the state agency consultants, Plaintiff's principal argument—which the Court has herein rejected—is that the ALJ should have favored "APRNs Villasenor's and MacMaster's specialization as psychiatric nurse practitioners and their treating relationships with [Plaintiff]." Nevertheless, the Court is satisfied that the ALJ considered the relevant factors, finding that the state agency consultants' opinions are largely supported by the treatment records upon which they relied, and are otherwise consistent with the record evidence. As such, the ALJ committed no reversible error.

light of medical findings and other evidence, regarding the true extent of pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). Indeed, it is not the role of the Court to review the record *de novo*. *See generally Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Brault*, 683 F.3d at 448 (the Court can reject the Commissioner's findings "only if a reasonable factfinder would have to conclude otherwise") (internal quotation marks and citation omitted).

Here, Plaintiff essentially seeks an alternative outcome based on her subjective complaints and her interpretation of the record evidence. But it is well-settled that an ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier*, 606 F.3d at 49 (citations omitted); *see also Johnson v. Berryhill*, No. 3:16-CV-1050 (SRU), 2017 WL 2381272, at *7 (D. Conn. June 1, 2017) ("Credibility findings of an ALJ are entitled to great deference and . . . can be reversed only if they are patently unreasonable.") (quoting *Pietrunti v. Dir., Off. of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997)). The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 29. In discussing those inconsistencies, the ALJ specifically pointed to Plaintiff's ability to successfully care for her infant daughter, as well as her improved functionality while taking her medication as prescribed. The ALJ further noted that Plaintiff was able to obtain and maintain full time employment at a local pharmacy, and later, as a waitress.[12] As such, the ALJ's assessment of Plaintiff's subjective statements in relation to the objective

---

[12] While Plaintiff's work as a waitress may not have constituted SGA, it is nonetheless properly considered when determining her RFC. *See Corbiere*, 760 F. App'x. at 57. Moreover, the Court further notes that Plaintiff did not quit her job waitressing because of issues related to her bipolar disorder, but rather, because she was eight months pregnant and "always on her feet." *See* Tr. 1559.

medical evidence was not "patently unreasonable," and the ALJ committed no error in evaluating those statements. *See Johnson*, 2017 WL 2381272 at *7; *see, e.g.*, *Penfield v. Colvin*, 563 F. App'x. 839, 840 (2d Cir. 2014) (ALJ did not commit reversible error where the ALJ afforded Plaintiff's subjective statements only partial credibility because they were inconsistent with the objective evidence in the record).

Elsewhere in the record, the ALJ's RFC determination is supported by substantial evidence. In formulating Plaintiff's RFC, the ALJ relied on the prior administrative findings of both state agency consultants, which the ALJ found generally persuasive. Each of the state agency consultants opined that Plaintiff is "moderately limited" in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday without interruptions from her psychological symptoms, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in her work setting. *See* Tr. 90, 105. However, Plaintiff was assessed as "not significantly limited" in each of the remaining 11 areas of mental functionality. *See id.* Further, the state agency consultants determined, *inter alia*, that Plaintiff can "carry out routine, repetitive tasks in a setting that does not require strict adherence to time or production quotas," but "may have difficulty in settings requiring frequent interaction w[ith] the general public." *Id.* In turn, the ALJ crafted an RFC based on these findings, as well as: (a) Plaintiff's improvement with treatment and medication compliance; (b) her ability to successfully care for her infant daughter; and (c) her ability to work as a cashier and waitress, albeit not at an SGA level. *See* Tr. 28. Thus, the Court finds that the ALJ's RFC formulation is supported by substantial evidence.

**Conclusion**

For the foregoing reasons, Plaintiff's Motion to Reverse (ECF No. 19) is **DENIED** and the Commissioner's Motion to Affirm (ECF No. 25) is **GRANTED**. The Clerk of Court is directed to enter judgment in favor of the Commissioner and close this file.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of February 2025.

                                            /s/ Kari A. Dooley
                                            KARI A. DOOLEY
                                            UNITED STATES DISTRICT JUDGE